IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

L. KIRK TOMPKINS and
SUSIE TOMPKINS,

    Plaintiffs,

v.                                                                               No 1:17-cv-00460 MCA-KRS

LIFEWAY CHRISTIAN RESOURCES OF THE
SOUTHERN BAPTIST CONVENTION,
THOM RAINER, *President of Lifeway*,
JERRY L. RHYNE, *C.F.O. of Lifeway*,
LARRY D. CANNON, *Sec. of Lifeway*,
DAVID WEEKLEY, *Director of Glorieta 2.0*,
TERRY LOOPER, *Director of Glorieta 2.0*,
LEONARD RUSSO, *Director of Glorieta 2.0*,
ANTHONY SCOTT, *Director of Glorieta 2.0*,
HAL HILL, *Consulting Director of Glorieta 2.0*,
LINDA K. DEAN, *Trustee of Lifeway*, and
JEFF WARD, *Director of Finance, Glorieta 2.0*,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' motions to dismiss Counts I-V of the Complaint and for sanctions (Docs. 23, 24, 25, and 49). Also before the Court is Plaintiffs' motion seeking leave to file a surreply (Doc. 66). Defendants argue Plaintiffs' *pro se* Complaint is abusive, barred by preclusion principles, and fails to state a cognizable claim. For the reasons set out below, the Court will deny leave to file a surreply; deny Defendants' motions to dismiss Counts I – IV without prejudice, but grant leave to amend those claims; dismiss Count V; and decline to impose sanctions at this time.

**BACKGROUND**

For the limited purpose of this ruling, the Court assumes the relevant facts taken from

Plaintiff's complaint are true.

The Southern Baptist Convention ("SBC") owned certain real property in New Mexico and Tennessee. (Doc. 20, p. 12-14). SBC had a business relationship with Defendant Lifeway Christian Resources ("Lifeway"). *Id.* at p. 12-13. Plaintiffs own, or used to own, a residential dwelling located at 304 Aspen Rd. in Glorieta, New Mexico ("Aspen Property"). *Id.* at p. 7-8; 16. Construed liberally, the Complaint appears to allege the Aspen Property was part of the Glorieta Conference Center ("GCC Property"), a project managed by Lifeway. *Id.* at p. 2, 13-15. The GCC Property sits on 2,500 acres and features single family homes, a religious retreat, camp buildings, a resort, and a conference center. *Id.* at p. 18.

In 2013, Glorieta 2.0 Inc. ("Glorieta 2.0") expressed interest in purchasing the GCC Property. *Id.* at p. 14-15. Glorieta 2.0 director David Weekley met with the GCC Property homeowners, including Plaintiffs, to discuss the sale. *Id.* Plaintiffs were not permitted to bring legal representatives or real estate brokers to the meeting. *Id.* at p. 39. Weekley knew the GCC Property was worth $12 million, but he only "allocated" $2.5 million to the purchase. *Id.* at p. 15. Glorieta 2.0 purchased the GCC Property in September 2013. *Id.* Lifeway took the position that it sold the GCC land to Glorieta 2.0 without selling any dwelling houses. *Id.* at p. 23. The purchase contract therefore included an option for Plaintiffs to sell the home on the Aspen Property (presumably to Glorieta 2.0) for $84,999. *Id.*

According to Plaintiffs, Glorieta 2.0's contract to purchase the GCC Property is "void on the basis of unconscionability." *Id.* at p. 34. Plaintiffs also refused the $84,999 purchase offer on the home because it was insulting and unconscionable. *Id.* at p. 23-24. Thereafter, Defendants embarked on "a complex scheme leading to egregious heinous damages inflicted on Plaintiffs in efforts to make [them] accept an Unconscionable Contract Offer for [their] Private Property." *Id.*

2

at p. 16, 23.  Specifically, Defendants represented that the GCC Property lost revenue; published deceitful articles in Baptist newsletters; and misrepresented information at a Baptist conference. *Id.* at p. 21.  Defendants also misrepresented the terms of the GCC Property sale and falsified property records to "explain away errors in … previous … sales contracts."  *Id.* at p. 18, 23-24, 29.  These tactics devalued Plaintiff's home and prevented them from selling the property for fair market value.  *Id.* at p. 25.  Plaintiffs allege Glorieta 2.0's directors intentionally engaged in such misconduct to profit at the homeowners' expense.  *Id.* at p. 32.

In the following years, Plaintiffs submitted five written requests to "discuss problematic conditions" on the GCC Property, including waste management issues.  *Id.* at p. 27-28.  Then, in 2016, Plaintiffs confirmed Lifeway, its agents, and "representatives at 'GCC'" used the GCC Property as an illegal dump site for toxic waste.  *Id.* at p. 28, 35.  The problem purportedly existed for at least 40 years.  *Id.* at p. 28.  The toxic materials included: "additional debris from renovations;" "asbestos;" "hazardous building materials;" "chemicals;" "carcinogens;" and "black mold" in the eating facility.  *Id.* at p. 36, 38, and 40.  Plaintiffs and their children were exposed to the dump site in the 1980's, and they ate at the dining hall containing black mold.  *Id.* at p. 35, 38.  Lifeway failed to inform residents about the toxic areas and instead attempted to escape liability by selling the GCC Property to Glorieta 2.0.  *Id.* at p. 35.

According to the Complaint, such misconduct caused "unknown health problems over several decades" and "anxiety for years to come."  *Id.* at p. 36, 38.  Plaintiffs further allege that "at the time of death of [their] Paternal father, the 'HIDDEN' hazards created and unattended at 'GCC' had been on the 'GCC' Property within ½ mile from" their religious retreat/dwelling home.  *Id.* at p. 41.  Lifeway and Glorieta 2.0 are allegedly under criminal investigation for illegal dumping and other violations of environmental law.  *Id.* at p. 39.

3

Plaintiffs also allege Defendants abused Mike Adney, a third party. *Id.* at p. 42. Adney functions as Plaintiff's "Trustee." *Id.* He resides at the Aspen Property house "for security," and presumably to maintain a presence until the dispute over ownership is resolved. *Id.* Glorieta 2.0 Director Jeff Ward allegedly threatened and harassed Adney in an attempt to extort Plaintiffs. *Id.* Such conduct caused Plaintiffs to experience "mental distress" and denied them "meaningful rest leading to sleeplessness." *Id.*

Based on the foregoing, Plaintiffs filed an Amended Verified Complaint for Civil Fraud, Denial of Constitutional Due Process, Unconscionable Contract, Breach of Fiduciary Duty, and Extortion ("Complaint"). (Doc. 20). The claims are broken down as follows:

(Count 1): Fraud, which relates to the sale of the GCC Property and the purchase offer on the Aspen Property dwelling house. (Doc. 20, p. 20-26)

(Count II): Denial of Constitutional Due Process, which relates to the sale of the GCC Property, the purchase offer, and the "taking" of the Aspen Property. (Doc. 20, p. 27-30).

(Count III): Unconscionable Contract, which relates to unjust enrichment, the purchase offer, and the sale contract for the GCC Property. (Doc. 20, p. 30-34).

(Count IV): Breach of Fiduciary Duty, which relates to the failure to properly dispose of toxic waste and inform residents of the attendant risks. (Doc. 20, p. 35-41).

(Count V): Extortion, which relates to the threats against Adney. (Doc. 20, p. 42-43). Plaintiffs seek $800,000 in damages, plus punitive damages in an amount to be determined by a jury. (Doc. 20, p. 47).

**RULE 12(B)(6) STANDARDS**

In ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true and must view them in the light most favorable to the plaintiff. *See Zinermon v.*

*Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). The complaint must set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient to state a plausible claim of relief. *Id*. at 570. A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Because Plaintiffs appear *pro se*, their "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). If the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, "it should do so despite the plaintiff's failure to cite proper legal authority, … confusion of various legal theories, … poor syntax and sentence construction, or … unfamiliarity with pleading requirements." *Id.* At the same time, however, it is not "the proper function of the district court to assume the role of advocate for the *pro se* litigant." *Id.*

**ANALYSIS**

This ruling addresses five motion packages: (1) Defendants' motion to dismiss Counts I – III based on preclusion principles; (Doc. 23); (2) Defendants' motion to dismiss Count IV for failure to state a cognizable claim (Doc. 24); (3) Defendants' motion to dismiss Count V for failure to state a cognizable claim (Doc. 25); (4) Plaintiff's motion seeking leave to file a surreply in connection with each motion to dismiss (Doc. 66); and (5) Defendants' motion seeking sanctions (Doc. 49). The Court will discuss each motion below.

A.  *Leave to File a Surreply.*

As an initial matter, Plaintiffs seek leave to file a surreply in connection with all three motions to dismiss (Docs. 23-25). Whether to permit a surreply is a matter of discretion. *Conroy v. Vilsack,* 707 F.3d 1163, 1179 n. 6 (10th Cir. 2013). "Courts generally do not grant a party leave to file a sur-reply unless the opposing party's reply brief includes new information that the responding party needs an opportunity to address." *Carrasco v. New Mexico Dep't of Workforce Solutions,* 2013 WL 12092509 (D.N.M. March 19, 2013). Therefore, "a district court abuses its discretion only when it both denies a party leave to file a surreply *and* relies on new materials or new arguments in the opposing party's reply brief." *Conroy,* 707 F.3d at 1179 n.6.

Plaintiffs have not identified any new arguments raised by Defendants in the reply briefs. Instead, Plaintiffs seek to amplify their arguments about why the motions to dismiss should be denied. For example, Plaintiffs argue that Defendants: (1) have more resources than Plaintiffs; (2) are afraid of a civil trial; and (3) failed to highlight certain facts or address Plaintiffs' affidavits. (Doc. 66, p. 4). Plaintiffs also complain that the reply briefs point out instances where Plaintiffs' response fails to adequately address Defendants' arguments. *Id.* at p. 5. None of these issues warrant a surreply. The Court will therefore deny Plaintiffs' Motion for Leave to File Surreply (Doc. 66).

B.  *Preclusion Principles and Summary Judgment*

In their first Motion to Dismiss, Defendants argue Counts I, II, and III, and any claims against Defendants Weekley, Russo, and Looper, are barred based on issue and claim preclusion. (Doc. 23). Defendants assert Counts I - III (fraud, denial of constitutional due process, and unconscionable contract) were previously adjudicated in Plaintiffs' first federal court lawsuit, *Tompkins v. Executive Committee of the Southern Baptist Convention, et al.,* No. 13-cv-840 JB/CG

("*Tompkins I*"). There, Plaintiffs argued "that they own a piece of … land [on the Glorieta Conference Center], and that the Defendants . . . conspired or otherwise acted to fraudulently convey the Glorieta Conference Center to Defendant Glorieta 2.0, Inc." (Doc. 186, p. 2 in Case No. 13-cv-840 JB/CG). The Court dismissed Plaintiffs' complaint for lack of standing and failure to state a claim. *Id.* Defendants also argue preclusion principles apply to the Court's previous determination that it lacked personal jurisdiction over Defendants Weekley, Looper, and Russo. (Doc. 23, p. 15).

Plaintiff's response to the motion to dismiss attaches various exhibits (Doc. 50, pp. 19-46), including an affidavit (Doc. 50, pp. 27-46), and appears to seek conversion to a summary judgment proceeding. (Doc. 50, p. 9-15). *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) …, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). In their reply brief, Defendants ask the Court to disregard Plaintiffs' exhibits and decide the matter under Rule 12(b)(6). (Doc. 56 p. 5).

Defendants are correct that a matter need not be decided on summary judgment simply because the non-movant attaches evidence to their response. The proffered material must be "likely to facilitate the disposition of the action." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366, p. 165 (2004). *See also* 2 Moore's Federal Practice § 12.34[3][a] (2013) ("Courts tend to use the conversion option only in situations in which the materials extrinsic to the pleadings are incontrovertible and pose discrete and dispositive issues."). If the evidence is not dispositive, the Court has discretion to strike the exhibits and decide the matter under Rule 12(b)(6). *See Geras v. Int'l Bus. Machs. Corp.*, 638 F.3d 1311, 1314 (10th Cir. 2011) (holding that district courts have discretion to exclude extraneous materials presented in connection with a motion to dismiss).

7

Here, however, striking Plaintiffs' evidence will not resolve the matter because Defendants also seek to proffer key facts and evidence under the guise of Rule 12(b)(6). The Motion to Dismiss includes a detailed, six-page fact section. (Doc. 23, p. 3-9). The facts are not immediately apparent from the complaint or the federal court dockets, and Defendants cite to affidavit testimony. *Id.* at p. 5. Defendants' arguments about privity also appear to rely on unsupported factual statements about the interconnectivity of the corporate officers working for Lifeway and Glorieta 2.0. *See, e.g.,* (Doc. 23, p. 16) (stating in the argument section: "Hall Hill [is] a former Lifeway employee and present consultant of Glorieta 2.0"). Such information goes beyond the contents of the complaint and beyond any "matters of which a court may take judicial notice." *Gee v. Pacheco,* 627 F.3d 1178, 1186 (10th Cir. 2010) (describing the limited extraneous materials courts may consider under Rule 12(b)(6)). The Court must therefore decide Defendants' preclusion arguments in a summary judgment proceeding.

Normally, a motion to dismiss that relies on extrinsic evidence is converted to a summary judgment motion, and the parties are "given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). This particular motion package will be difficult to convert, however. Defendants have already set forth a six page statement of facts, to which Plaintiffs have not had an opportunity to respond, and Plaintiffs purport to include their facts in an exhibit. As discussed below, Plaintiffs may also file an amended complaint, which will likely alter the landscape even further. For these reasons, the Court will deny the Motion to Dismiss Counts I-III without prejudice and allow Defendant to file a summary judgment motion on their preclusion arguments. The parties are warned that any summary judgment filings must comply with the federal and local rules of civil procedure. *See Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992) (noting that although *pro se* pleadings are construed liberally, *pro se* litigants

"nevertheless must follow the same rules of procedure that govern other litigants").

      C.     *Breach of Fiduciary Duty/Toxic Tort Claim*

Defendants' second motion to dismiss focuses on Count IV. (Doc. 24). Construed liberally, Count IV appears to raise a toxic tort negligence claim and a claim for breach of fiduciary duty based on the failure to warn residents about the toxic substances. A toxic tort is a "civil wrong arising from exposure to a toxic substance, such as ... radiation." *Firstenberg v. Monribot,* 2015-NMCA-062, ¶ 14, 350 P.3d 1205 (quoting *Black's Law Dictionary* 1718 (10th ed. 2014)). "[W]here the plaintiff seeks to establish injury as a result of exposure to a harmful substance, … the plaintiff is required to prove both general and specific causation." *Firstenberg,* 2015-NMCA-062, ¶ 14. "General causation is whether a substance is capable of causing a particular injury or condition in the general population and specific causation is whether a substance caused a particular individual's injury." *Andrews v. U.S. Steel Corp.*, 2011-NMCA-032, ¶ 9, 250 P.3d 887.

The failure to inform a plaintiff about toxic waste could, under certain circumstances, support a claim for breach of fiduciary duty. "[A] fiduciary relationship exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of one reposing the confidence." *Moody v. Stribling*, 1999-NMCA-094, ¶ 18, 985 P.2d 1210. The "fiduciary is required to fully disclose material facts and information relating to the fiduciary relationship even if the one to whom the duty is owed has not asked for the information." *Valerio v. San Mateo Enters., Inc.,* 2017-NMCA-059, ¶ 23, 400 P.3d 275 (internal brackets and ellipses omitted) (quoting *Fate v. Owens*, 2001-NMCA-040, ¶ 25, 27 P.3d 990).

The Court agrees that Plaintiffs' Complaint does not allege facts to support either claim. The Complaint lists various substances (asbestos, carcinogens, black mold) that could, in theory,

cause health problems.  However, Plaintiffs have not identified where each substance was found on the GCC property or otherwise described their potential exposure.  Further, Plaintiffs have not alleged any particular substance caused them to suffer any "particular injury or condition." *Andrews,* 2011-NMCA-032, ¶ 9.  The allegations supporting causation and damages merely refer to "unknown health problems over several decades;" the potential for "anxiety for years to come;" and the fact that hidden hazards existed near Plaintiffs' home when a relative died.  (Doc. 20, p. 36, 38, 41).  Plaintiff has also not alleged facts demonstrating a "special confidence" between the parties to support a breach of fiduciary claim.  Count IV therefore fails to state a claim upon which relief can be granted.

Our Tenth Circuit has counseled that *pro se* litigants should be given a reasonable opportunity to "remedy defects potentially attributable to their ignorance of …[the] law." *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990).  The opportunity to amend the complaint should be granted unless amendment would be futile.  *See Hall*, 935 F.2d at 1109.  In other words, "if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend." *Reynoldson*, 907 F.2d at 126 (internal brackets, quotation marks and citation omitted).

Because Plaintiffs failed to state a claim with regard to Count IV, the Court grants Defendant's motion to dismiss as to Count IV.  However, as Plaintiffs' response to the motion to dismiss includes additional facts not set forth in the complaint, the Court will exercise leniency in consideration of Plaintiffs' pro se status and allow grant Plaintiffs leave to amend their complaint. *Gee*, 627 F.3d at 1186.  The amendment must conform to the instructions set forth in Section E, below.

    D.    *Extortion/Malice Claim*

Defendants' final motion to dismiss is directed at Count V, labelled "Extortion and Malice Aforethought." (Doc. 25). Count V appears to seek recovery, at least in part, for alleged injuries to a third party "Trustee" named Mike Adney. Plaintiffs allege Defendant Jeff Ward threatened and harassed Adney. (Doc. 20, p. 42). According to the response brief, such conduct deprived Adney of "due process" and "equal protection of the laws." (Doc. 52, p. 3).

To the extent the Complaint seeks to vindicate injuries to Adney, these claims clearly fail. It is well established that a *pro se* litigant cannot represent or act on behalf of others. *Fymbo v. State Farm Fire and Cas. Co*., 213 F.3d 1320, 1321 (10th Cir. 2000). *See also Lewis v. Clark,* 577 F. App'x 786, 793 (10th Cir. 2014) (unpublished opinion) (A "litigant may bring his own claims to federal court without counsel, but not the claims of others") (internal quotation marks and citations omitted); *Menefee v. Werholtz,* 368 F. App'x 879, 883 (10th Cir. 2010) (unpublished opinion) (noting *pro se* parties may not represent each other). As the Tenth Circuit explained, "the competence of a layman is 'clearly too limited to allow him to risk the rights of others.'" *Fymbo*, 213 F.3d at 1321 (quoting *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)).

Count V also appears to assert direct claims for "extortion" and various Constitutional violations. There are no New Mexico cases permitting a civil action for extortion, and the claim is not viable in most states. *See, e.g, Jensen v. America's Wholesale Lender,* 2010 WL 2720745, *2 (D. Utah July 8, 2010) ("Utah law does not recognize a civil claim for relief for extortion") *aff'd* 425 F. App'x 761 (10th Cir. 2011); *Zagorski v. McAdam,* 2014 WL 2982669, *6 (W.D. Okla. July 1, 2014) ("Oklahoma does not recognize a civil cause of action for extortion"); *Natural Wealth Real Estate, Inc. v. Cohen,* 2006 WL 3500624, *7 (D. Colo. Dec, 4, 2006) (same, but for Colorado).

Further, a cause of action under section 1983 for a Constitutional violation "requires the deprivation of a civil right by a 'person' acting under color of state law." *McLaughlin v. Bd. of*

11

*Trs. of State Colls. of Colo.*, 215 F.3d 1168, 1172 (10th Cir. 2000). The plaintiff must allege that a government official, through the official's own individual actions, has personally violated the Constitution. *See Trask v. Franco,* 446 F.3d 1036, 1046 (10th Cir. 1998).

The Complaint does not satisfy the above standards. Plaintiffs have not alleged Defendants obtained any property by threatening Adney. (Doc. 20, p. 42-43). They may be trying to argue Defendants somehow obtained the Aspen Property dwelling house, but the Court cannot discern these facts from the current Complaint.[1] (Doc. 20, p. 43). Plaintiffs also failed to allege that any Defendants are state actors, as required by Section 1983. Finally, to the extent Count V seeks to raise a bystander emotional distress claim based on Plaintiffs' "mental anguish" and "sleeplessness," such allegations do not rise to the level of an intentional or negligent infliction of emotional distress. *See Baldonado v. El Paso Natural Gas Co.*, 2008-NMSC-005, ¶¶ 27, 38, 176 P.3d 288 (stating that to establish intentional infliction of emotional distress the plaintiff's emotional distress must have been "extreme and severe").

Because it is difficult to discern the details of Count V, and in accordance with the Tenth Circuit's directive to grant *pro se* parties leave to amend, the Court will dismiss Count V without prejudice and allow Plaintiffs an opportunity to file a motion for leave to amend their complaint.

E. *The Proposed Amended Complaint*

Plaintiffs may file a motion for leave to file a single amended complaint within 30 days of entry of this Order. The amended complaint should endeavor to address the defects in Counts IV and V. Plaintiffs are permitted, but not required, to seek to amend the remainder of the Complaint. The proposed amended complaint must comply with Fed. R. Civ. P. 8(a), which requires a short

---

[1] As further cause for dismissal, Defendants proffered an affidavit and other exhibits to demonstrate Plaintiffs have no rights to the Aspen Property. (Docs. 60, 61). The Court finds Count V is deficient without considering this evidence, which should in any event be proffered in a summary judgment proceeding. *See Supra, Section B.*

and plain statement of the grounds for relief. Plaintiffs must clarify "whom plaintiff[] [is] suing for what wrong," including what each defendant allegedly did to incur liability. *See Mann v. Boatright,* 477 F.3d 1140, 1148 (10th Cir. 2007); *Baker v. City of Loveland,* 2017 WL 1485006, * 1 (10th Cir. April 26, 2017). The Court also warns Plaintiffs that filing a motion for leave to amend their complaint will not immunize their claims from dismissal.

    F.    *Sanctions*

Defendants' final motion seeks sanctions under Fed. R. Civ. P. 11, arguing this lawsuit is frivolous and/or malicious. (Doc. 49). The Court cannot make that determination without assessing the viability of Defendants' preclusion arguments and Plaintiffs' amended complaint. The Court will therefore deny the sanctions motion as premature and without prejudice. Defendants may renew the motion depending on the outcome of any later dispositive rulings.

**CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiffs' Second Motion for Leave to File a Surreply (Doc. 66) is **DENIED**.

**ORDERED FURTHER** that Defendants' Motion to Dismiss Counts I, II, and III of the Amended Complaint (Doc. 23) is **DENIED** without prejudice to filing a summary judgment motion addressing the same issues.

**ORDERED FURTHER** that Defendants' Motion to Dismiss Count IV of the Amended Complaint (Doc. 24) and Motion to Dismiss Count V of the Amended Complaint (Doc. 25) are **GRANTED, IN PART**. Counts IV and V are **DISMISSED** without prejudice, but Plaintiffs may file a motion to amend their complaint within thirty (30) days of entry of this Order.

**IT IS FINALLY ORERED** that Defendants' Motion for Sanctions (Doc. 49) is **DENIED** as premature and without prejudice.

13

**SO ORDERED** this 10th day of April, 2018 in Albuquerque, New Mexico.

_____
M. CHRISTINA ARMIJO
United States District Judge