## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**L. KIRK TOMPKINS** and **SUSIE TOMPKINS**,

       Plaintiffs,

v.                                                                 **No. CIV 17-cv-0460 RB/KRS**

**LIFEWAY CHRISTIAN RESOURCES OF THE
SOUTHERN BAPTIST CONVENTION**;
**THOM RAINER**, *President of Lifeway*;
**JERRY L. RHYNE**, *C.F.O. of Lifeway*;
**LARRY D. CANNON**, *Sec. of Lifeway*;
**DAVID WEEKLEY**, *Director of Glorieta 2.0, Inc.*;
**TERRY LOOPER**, *Director of Glorieta 2.0, Inc.*;
**LEONARD RUSSO**, *Director of Glorieta 2.0, Inc.*;
**ANTHONY SCOTT**, *Executive Director of Glorieta 2.0, Inc.*;
**HAL HILL**, *Consulting Director of Glorieta 2.0, Inc.*;
**LINDA K. DEAN**, *Trustee of Lifeway*; and
**JEFF WARD**, *Director of Finance and Administration
of Glorieta 2.0, Inc.*,

       Defendants.

## MEMORANDUM OPINION AND ORDER

Defendant LifeWay Christian Resources (LifeWay) owned land in New Mexico where it hosted Christian conferences, retreats, and camps. From 1997 through 2013, Kirk and Susie Tompkins (Plaintiffs) leased a single lot of LifeWay's land and made improvements to the land. The parties' lease agreement provided that: (1) when the lease expired, LifeWay had sole discretion to renew or terminate the lease; (2) if LifeWay terminated the lease, it had the option to buy any improvements; and (3) if LifeWay chose not to buy the improvements, Plaintiffs could either remove them or ownership of the improvements would pass to LifeWay.

In June 2013, LifeWay contracted to sell its New Mexico property to Defendant Glorieta 2.0, Inc. (Glorieta 2.0). Lifeway gave Plaintiffs notice on September 11, 2013, that when Plaintiffs'

lease expired on September 30, 2013, the lease would not be renewed and LifeWay would not buy the improvements. Plaintiffs filed suit in federal court and asked the court to stop (and later to reverse) the sale of the property to Glorieta 2.0. On March 31, 2015, Judge Browning dismissed Plaintiffs' lawsuit, and the Tenth Circuit later affirmed that decision.

In 2017, Plaintiffs filed a second lawsuit seeking damages, which is currently before this Court. Plaintiffs now seek leave to file a Second Amended Complaint. Defendants ask the Court to deny the motion to amend and grant Defendants summary judgment on Counts I through III of Plaintiffs' first Amended Complaint. Because the Court finds that Plaintiffs' claims are barred by claim preclusion and they have failed to state a claim on which relief may been granted, the Court will deny Plaintiffs' motion to amend, grant Defendants' motion for summary judgment, and dismiss this case with prejudice.

## I.      Legal Standards

Plaintiffs' "pro se . . . pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers . . . ." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (internal citations omitted)). The Court may not, however, "serv[e] as the litigant[s'] attorney in constructing arguments and searching the record." *Id.* (citing *Hall*, 935 F.2d at 1110).

### A.      Motion to Amend Standard

Rule 15 allows a party to amend its pleading once as a matter of course in limited circumstances. Fed. R. Civ. P. 15(a)(1). Otherwise, a party may only amend its pleading with "opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 directs that leave shall be freely given "when justice so requires." *Id.* "The purpose of the Rule is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than

on procedural niceties.'" *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)) (internal citation omitted). A court may deny a motion for leave to amend where there has been "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . ." *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999) (citing *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999)). "The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim . . . ." *Id.* (citations omitted). In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015) (quotation omitted). To survive a motion to dismiss, the complaint does not need to contain "detailed factual allegations," but it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).

**B.     Summary Judgment Standard of Review**

Summary judgment is appropriate when the Court, viewing the record in the light most favorable to the nonmoving party, determines "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). A fact is "material" if it could

influence the determination of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a reasonable trier of fact could return a verdict for either party. *Id.* The moving party bears the initial responsibility of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the moving party meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [their] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quotation marks omitted). The party opposing a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (citing *Celotex*, 477 U.S. at 324). Rule 56(c) provides that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). The respondent may not simply "rest on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 259. Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." *Colony Nat'l Ins. Co. v. Omer*, No. 07-2123-JAR, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008) (citing Fed. R. Civ. P. 56(e); *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006)). "In a response to a motion for summary judgment, a party cannot rest on

ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (citations omitted).

## II.     Background

Before laying out the relevant facts and procedural background of the case, it is necessary for the Court to resolve the parties' disputed facts to the extent they will inform the Court's ruling on summary judgment.

### A.     Resolution of Disputed Facts

#### 1.     Undisputed Material Facts

Plaintiffs agree with Defendants' statements in Material Facts Nos. 1, 15–17 and 24; thus, these facts are admitted as undisputed. (*See* Doc. 81 at 16, 21–22.)

Plaintiffs dispute the remaining 26 of Defendants' 31 Material Facts, but the majority of Plaintiffs' responses are comprised of conclusory and unsupported legal conclusions without citations to the record. (*See id.* at 16–23.) Specifically, Plaintiffs "disagree with" Defendants' Material Facts Nos. 2, 4, 5, 10, 13, 18–21, 23, and 25–31. Plaintiffs fail, however, to reference any portion of the record in response to these facts. (*See id.*) Because Plaintiffs fail to specifically controvert the facts asserted with citations to the record, the Court deems these facts to be undisputed. *See* D.N.M. LR-Civ. 56.1(b) (providing that the Court will deem the movant's material facts undisputed unless the non-moving party specifically controverts those facts).

While Plaintiffs cite to the record in response to Material Facts Nos. 3, 7–9, 11–12 and 14 (*see id.* at 16–21), the cited material does not specifically controvert the facts alleged. Moreover, Plaintiffs' responses are primarily comprised of argument, conjecture, and legal conclusions. Accordingly, the Court deems these facts to be undisputed.

## 2. Disputed Facts

Plaintiffs present evidence to show that a genuine dispute exists about Defendants' Material Fact No. 6—whether LifeWay operated the Glorieta Conference Center (GCC) at a loss. (*See* Docs. 78 at 4; 81 at 18 (citing Doc. 72-3); 82 at 3.) The Court finds, however, that this fact is immaterial to its determination of this lawsuit.

Plaintiffs' responses to Material Facts Nos. 22 and 31 help clarify their intent in Count III of their First and Second Amended Complaints, and the Court will discuss them in some detail. First, Defendants discuss in Material Fact No. 22 that after Judge Browning dismissed the 2013 lawsuit[1] (*Tompkins v. Exec. Comm. of the S. Baptist Convention*, 13cv0840-JB/RHS, 2015 WL 1568375 (D.N.M. Mar. 31, 2015) (the "*Tompkins I* March 2015 Order")), Plaintiffs appealed to the Tenth Circuit. (*See* Doc. 78 at 7 (citing *Tompkins v. Lifeway Christian Res. of the S. Baptist Convention*, 671 F. App'x 1034 (10th Cir. 2016) ("*Tompkins II*")).) Relevant to Material Fact No. 22, the Tenth Circuit disagreed with Plaintiffs' contention on appeal "that their complaint contained a plausible claim of" either procedural or substantive unconscionability in the terms of the lease agreement between Plaintiffs and LifeWay. *Tompkins II*, 671 F. App'x at 1036 (noting that "[a]lthough the terms of the leases at issue operated to the detriment of the Tompkins, the operative complaint does not contain allegations suggesting procedural unconscionability[,] . . . [n]or have" Plaintiffs sufficiently shown substantive unconscionability). Plaintiffs respond to Material Fact No. 22 by alleging that their court-appointed counsel "incorrectly pled" the unconscionable contract theory to the Tenth Circuit, and their intent was to assert that the Glorieta 2.0 "contract, originally referenced in a 'Donor Group Letter'" was unconscionable. (Doc. 81 at 22 (citing Docs. 81-13; 81-14; 72-5).) It is unclear what contract Plaintiffs reference here, as the

---

[1] The Court will refer to the docket in the 2013 lawsuit, 13cv0840, as "*Tompkins I*."

Donor Group Letter references two potential contracts—one for Glorieta 2.0 to buy GCC, and the other a discussion of an *offer* for Glorieta 2.0 to potentially enter into a contract to buy Plaintiffs' home. (*See* Doc. 81-13 (discussing LifeWay's decision to sell GCC and the leaseholders' options once their leases expire, including one alternative "that would allow [Plaintiffs] to sell the existing improvements to" Glorieta 2.0).) Regardless, the Court finds that this distinction—insofar as it concerns Plaintiffs' intent before the Tenth Circuit—is immaterial to its determination of these motions.

In Material Fact No. 31, Defendants state that Plaintiffs now reassert, in Count III of their Amended Complaint (*see* Doc. 20 at ¶¶ 65–78 (the "First Amended Complaint")),[2] "claims that LifeWay's sale of the [GCC] was improper, and that their ground lease with LifeWay was unconscionable." (Doc. 78 at 9.) Plaintiffs dispute this fact and clarify that "the LifeWay lease is not alleged unconscionable." (Doc. 81 at 23.) Plaintiffs do not dispute that Count III asserts a claim that the GCC sale contract was unconscionable. (*Id.*) The Court notes that Count III may also be construed to assert a claim that an offer LifeWay and Glorieta 2.0 presented to Plaintiffs (the "2015 Offer") to buy their home for $84,999 was unconscionable because it would unjustly enrich Defendants at Plaintiffs' expense. (*See* Docs. 20 ¶¶ 67, 77; 72-1 ¶¶ 47 (asserting that Glorieta 2.0 "knowingly benefited at Plaintiffs['] expense reaping great value pursuant to an unconscionable contract if not fairly compensated for Private Property"), 57 (asserting that "Plaintiffs' complaint adequately presents a claim to declare LifeWay's presentation of [Glorieta 2.0] contract to

---

[2] The Court notes that the language in Count III of Plaintiffs' Second Amended Complaint is practically identical to that in Count III of their First Amended Complaint. (*Compare* Doc. 72-1 ¶¶ 45–58, *with* Doc. 20 ¶¶ 65–78.)

Plaintiffs void on the basis of Unconscionability"); 81-1 ¶ 14.) The Court will consider both interpretations of Count III in this Opinion.

### B. Factual and Procedural Background[3]

Until 2013, LifeWay owned the GCC, a 2,400-acre facility in New Mexico where LifeWay organized Christian conferences and other events. (Doc. 78 at 3 ¶ 1.) For many years, LifeWay entered into ground leases with individuals wherein LifeWay leased portions of the GCC property that were "not . . . needed for immediate development," and the individuals were allowed to construct and maintain "homes and other improvements to be used and operated in accordance with the plans and purposes of" GCC. (Doc. 78-D at 1; *see also* Docs. 78 at 4 ¶ 2; 78-E at 3 ¶ 10.) In 1997, Plaintiffs entered into a ground lease agreement with LifeWay, which the parties renewed several times over the years. (*See* Docs. 78-C; 78-D.) Pursuant to the lease agreement, LifeWay retained ownership of the land and Plaintiffs owned the improvements they constructed on the land.[4] (*See* Doc. 78 at 4 ¶ 2; *see also* Doc. 78-D at 4–5.) The lease agreement provided that LifeWay retained the sole discretion both to sell the land and/or to decline to renew the lease. (*See* Doc. 78 at 4 ¶ 3; *see also* Doc. 78-D at 4–5.) If LifeWay declined to renew the lease with Plaintiffs, the terms of the lease agreement allowed LifeWay to buy the improvements. (*See* Doc. 78 at 4 ¶ 4; *see also* Doc. 78-D at 4–5.) In the event LifeWay declined to buy the improvements, Plaintiffs

---

[3] For the purposes of this Opinion, the Court adopts the facts alleged in Plaintiffs' First and Second Amended Complaints (Docs. 20; 72-1) as true and views the allegations in the light most favorable to Plaintiffs. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). Additionally, as discussed in Section II(A)(1), the Court adopts the undisputed material facts in Defendants' motion for summary judgment that Plaintiffs failed to specifically controvert. Where relevant, the Court references documents and exhibits from *Tompkins I* that the parties have discussed in their briefs.

[4] Plaintiffs actually purchased and made improvements to a house that their family had constructed on the lot pursuant to a prior lease agreement with LifeWay. (*See* Doc. 78 at 3 ¶ 1 (citing *Tompkins I*, Docs. 110 at 4; 110-3).)

would have six months to remove the improvements or ownership of the improvements would pass to LifeWay. (*See* Doc. 78 at 4 ¶ 4; *see also* Doc. 78-D at 4–5.)

In June 2013, LifeWay agreed to sell GCC to Glorieta 2.0 for $1.00. (*See* Docs. 78 at 5 ¶ 9; 78-E at 3 ¶ 8.) Plaintiffs, who believed that the sale of GCC violated their rights, filed the *Tompkins I* lawsuit in September 2013, seeking to stop (and later to reverse) the sale. (*See* Docs. 78 at 5 ¶ 10; *Tompkins I*, Doc. 1.) Plaintiffs named 128 defendants, including all but two of the individuals and/or entities who are defendants in the current lawsuit. (*See* Doc. 78 at 5 ¶ 10; *Tompkins 1*, Doc. 1.) LifeWay wrote to Plaintiffs on September 11, 2013, after the sale closed, "and informed them that their lease would not be renewed after it expired on September 30, 2013, that LifeWay would not be purchasing the improvements, and that Plaintiffs would have six months after expiration to remove the improvements should they choose to do so." (Doc. 78 at 5 ¶ 11 (citing Doc. 78-G).)

The *Tompkins I* court dismissed with prejudice 113 of the named defendants, leaving many of the same defendants Plaintiffs sue in the current lawsuit, including Defendants Rainer, Rhyne, Cannon, Looper, Weekley, Russo, LifeWay, and Glorieta 2.0. (*See Tompkins I*, Doc. 102.) Plaintiffs filed a Third Amended Complaint. (*Tompkins I*, Doc. 125.) The *Tompkins I* defendants filed motions to dismiss. (*See Tompkins I*, Docs. 131; 137; 139.) Judge Browning dismissed Plaintiffs' 2013 claims in two separate opinions. First, Judge Browning dismissed Plaintiffs' third amended complaint as to Defendants Weekley, Russo, and Looper on the basis that the court lacked general or specific personal jurisdiction over them.[5] (*See Tompkins I*, Docs. 172 at 33 ¶ 32, 42 ¶ 60, 45 ¶ 79, 47 ¶¶ 87–88, 77–78 ¶¶ 1, 3, 5; 178 at 13–14; 186 at 5 n.1.)

---

[5] The Court also dismissed Plaintiffs' claims against a fourth individual defendant who is not named in the current action. (*See* Doc. 186 at 5 n.1.)

Second, the court dismissed the remainder of Plaintiffs' third amended complaint in the *Tompkins I* March 2015 Order. *See* 2015 WL 1568375. With respect to the remaining individual defendants (Rainer, Rhyne, and Cannon), the court dismissed all three of Plaintiffs' claims for failure to state a claim. *See id.* at *4–7. With respect to the corporate defendants (LifeWay and Glorieta 2.0), the court found that Plaintiffs lacked standing to assert the first two counts, and failed to state a claim in the third count. *See id.* at *7–11.

Plaintiffs appealed to the Tenth Circuit[6] and "raised the additional argument that the ground lease between them and LifeWay was an unconscionable contract under New Mexico law." (*See* Doc. 78 at 7 ¶ 22.) *See also Tompkins II*, 671 F. App'x at 1036. The Tenth Circuit affirmed Judge Browning's rulings and rejected Plaintiffs' claim that the lease was unconscionable. *See id.*

On April 20, 2015, shortly after Judge Browning dismissed Plaintiffs' claims, LifeWay's General Counsel, Defendant Cannon, sent Plaintiffs a letter offering to purchase Plaintiffs' home on the GCC property for $84,999 (the 2015 Offer). (*See* Doc. 72-1 ¶ 30.) Plaintiffs believe the 2015 Offer was drafted by LifeWay and Glorieta 2.0's leadership, including Defendants Weekley, Looper, Russo, Rainer, Rhyne, and Cannon. (*Id.* at 18 ¶ 38.) Defendants Hill and Scott also approached Plaintiffs about LifeWay's 2015 Offer. (*Id.* at 15–16 ¶ 31.) The 2015 Offer undervalued the property, which Plaintiffs assert is valued at $283,630. (*Id.*) Plaintiffs refused the 2015 Offer. (*Id.* at 15 ¶ 30.)

Plaintiffs filed the current lawsuit in April 2017. In their original Complaint, Plaintiffs brought claims for (I) fraud, (II) denial of constitutional due process, (III) unconscionable contract, and (IV) breach of fiduciary duty to properly inform and dispose of hazardous toxic chemical

---

[6] Relevant to the Court's analysis in this Opinion, Plaintiffs did not appeal Judge Browning's decision that the Court lacked personal jurisdiction over Defendants Weekley, Russo, and Looper. *See Tompkins II*, 671 F. App'x at 1036 n.2 (citation omitted).

waste. (*See* Doc. 1.) Plaintiffs filed a First Amended Complaint shortly thereafter and asserted the same four claims, as well as a fifth claim for (V) extortion and malice aforethought. (*See* Doc. 20.) Defendants filed three motions to dismiss. (*See* Docs. 23–25.) Judge Armijo granted the motions with respect to Plaintiffs' fourth and fifth claims (*see* Doc. 71 at 9–12), and denied the motions with respect to the first three counts of Plaintiffs' First Amended Complaint (*id.* at 6–9). Judge Armijo also granted Plaintiffs leave to file another amended complaint. (*Id.* at 12–13.)

On May 7, 2018, Plaintiffs moved to file a Second Amended Complaint. (Doc. 72.) Defendants moved for summary judgment on the first three counts of Plaintiffs' First Amended Complaint on June 21, 2018. (Doc. 78.) The lawsuit was reassigned to the undersigned judge on October 26, 2018. (*See* Doc. 86.)

### III. The Court will grant Defendants' motion for summary judgment, deny Plaintiffs' motion to amend, and dismiss the lawsuit.

Plaintiffs seek leave to file a Second Amended Complaint to add several allegations to their existing Counts I–III. (*See* Doc. 72.) Plaintiffs' proposed changes to Counts I–III are minor, and the Court's decision to grant summary judgment would be the same regardless of the operative complaint. Defendants move for summary judgment on these claims on the basis of issue and claim preclusion. (*See* Doc. 78.) Plaintiffs also seek to add two new claims: "bid-rigging" in Count IV, and "breach of fiduciary" in Count V. (*See* Doc. 72-1 ¶¶ 59–83.)

Defendants argue that all five of Plaintiffs' claims are barred by claim and/or issue preclusion. Defendants also object to the addition of Counts IV and V on the basis that it prejudices them "by forcing them to respond to new allegations and legal theories" and that Counts IV and V "fail to state a claim upon which relief can be granted . . . ." (Doc. 74 at 2.)

## A. Issue Preclusion

The doctrine of "issue preclusion bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim." *Park Lake Res. Ltd. Liab. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004) (citing *Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000) ("When an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.")) (internal quotation omitted).

In general, issue preclusion applies when:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Id.* (quoting *Dodge*, 203 F.3d at 1198) (internal citations omitted).

### 1. Plaintiffs' claims against Defendants Weekley, Russo, and Looper are barred by issue preclusion.

Defendants contend that Plaintiffs' claims against Defendants Weekley, Russo, and Looper are barred by issue preclusion. (Doc. 78 at 19.) Plaintiffs only object based on the second element—whether the 2013 lawsuit was adjudicated on the merits. (Doc. 81 at 13–14.)

"It has long been acknowledged that '[t]he principles of *res judicata* apply to questions of jurisdiction as well as to other issues.'" *Park Lake*, 378 F.3d at 1136 (quoting *Am. Surety Co. v. Baldwin*, 287 U.S. 156, 166 (1932)) (internal citation omitted). "In particular, dismissals for lack of jurisdiction 'preclude relitigation of the issues determined in ruling on the jurisdiction question.'" *Id.* (quoting *Matosantos Commercial Corp. v. Applebee's Int'l Inc.*, 245 F.3d 1203,

1209 (10th Cir. 2001)) (internal citations omitted). Thus, while Judge Browning's dismissal of Plaintiffs' claims against Defendants Weekley, Russo, and Looper based on a lack of personal jurisdiction "did not result in an adjudication on the merits, it has issue-preclusive consequences with respect to the issue decided." *See id.* Plaintiffs may not now present arguments that conflict with Judge Browning's decision that this Court lacks personal jurisdiction. *See id.* Accordingly, the Court will dismiss with prejudice all of Plaintiffs' claims against Defendants Weekley, Russo, and Looper.

### B.     Claim Preclusion

The doctrine of claim preclusion bars Plaintiffs "from litigating a legal claim that was or could have been the subject of a previously issued final judgment." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017) (quoting *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005)) (internal citation omitted). "The principle underlying the rule of claim preclusion is that a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not have another chance to do so." *Id.* (quoting *Stone v. Dep't of Aviation*, 453 F.3d 1271, 1275 (10th Cir. 2006) (internal citation omitted)) (internal quotation omitted). Defendants must establish three elements to show that claim preclusion applies: "(1) a [final] judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." *Id.* (quoting *King v. Union Oil Co. of Cal.*, 117 F.3d 443, 445 (10th Cir. 1997)). "In addition, even if these three elements are satisfied, there is an exception to the application of claim preclusion where the party resisting it did not have a 'full and fair opportunity to litigate' the claim in the prior action." *Id.* (quoting *MACTEC*, 427 F.3d at 831 & n.6).

### 1. Plaintiffs' claims against the remaining individual defendants are barred by claim preclusion.

The doctrine of claim preclusion will bar Plaintiffs from bringing their claims if the previous decision was a final judgment on the merits, the parties are the same or in privity, and the claims arise from the same underlying events as those in *Tompkins I*. *See Lenox MacLaren*, 847 F.3d at 1239.

### a. Judge Browning's March 2015 Order was a final judgment on the merits.

In response to Defendants' argument that Plaintiffs' claims are barred by claim preclusion, Plaintiffs argue only that Defendants cannot establish the first element—a final judgment on the merits. (*See* Doc. 81 at 26–28.) Plaintiffs cite to language from a Memorandum Opinion and Order Judge Browning entered in *Tompkins I*, denying the defendants' motion to strike the third amended complaint. (*See id.* at 27 (quoting *Tompkins I*, Doc. 185 at 7).) At that time, the *Tompkins I* defendants had asked the court to strike Plaintiffs' third amended complaint with prejudice as a sanction for Plaintiffs' alleged failure to comply with an order to provide a more definite statement of their claims. (*See Tompkins I*, Doc. 185 at 1, 4.) Judge Browning declined to impose such a sanction and denied the defendants' motion. (*Id.* at 7 (finding that the relevant "criteria [did not] support a dismissal of [the] case with prejudice").) This particular opinion, however, is not the final judgment that Defendants reference.

Judge Browning dismissed the relevant portion of Plaintiffs' third amended complaint in his March 2015 Order. *Tompkins I* March 2015 Order, 2015 WL 1568375. With respect to the remaining individual defendants (Rainer, Rhyne, and Cannon), the court dismissed all three of Plaintiffs' claims for failure to state a claim. *See id.* at *4–7. Judge Browning did not specify whether the dismissal was with or without prejudice. *See id.* The Tenth Circuit has held, however,

that where a district court dismisses a case for failure to state a claim and does not "specif[y] the type of dismissal, we presume it to be *with* prejudice." *Walker v. Balco, Inc.*, 660 F. App'x 681, 682 (10th Cir. 2016) (citing *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1299 (10th Cir. 2014) ("Dismissals for failure to state a claim are presumptively with prejudice because they fully dispose of the case.")) (internal citations omitted). Thus, the March 2015 Order qualifies as a final judgment on the merits.

### b. The individual defendants have established that the parties are the same or in privity with the defendants in the 2013 lawsuit.

Defendants Rainer, Rhyne, and Cannon were named in the 2013 lawsuit and are clearly the same for purposes of claim preclusion. (*See*, *e.g.*, *Tompkins I*, Doc. 125 at 1.) The remaining individual defendants are all either officers or employees of LifeWay or Glorieta 2.0: Defendant Scott is the Executive Director of Glorieta 2.0; Defendant Hill is a former LifeWay employee and is currently a consultant to Glorieta 2.0; Defendant Ward is the Director of Finance and Administration for Glorieta 2.0; and Defendant Dean is a trustee of LifeWay. Defendants contend that Defendants Scott, Hill, Ward, and Dean are in privity with the corporate defendants, and all claims against them arose "out of actions they allegedly took on behalf of LifeWay and/or Glorieta 2.0; and there is no allegation in this lawsuit that any of them acted outside the scope of their authority or employment." (Doc. 78 at 15 (citations omitted).) Plaintiffs do not dispute this argument. (*See* Doc. 81.)

The Tenth Circuit has noted that "[a] director's close relationship with the corporation will generally establish privity." *Fox v. Maulding*, 112 F.3d 453, 459 (10th Cir. 1997) (quoting *Lowell Staats Mining Co. v. Phila. Elec. Co.*, 878 F.2d 1271, 1277 (10th Cir. 1989); citing *Pedrina v. Chun*, 97 F.3d 1296, 1302 (9th Cir. 1996) ("concluding that corporate officers named in RICO

action were in privity with corporation that was party to earlier action, because officers stood accused of participating in the same wrongdoing with which the corporation was accused in the earlier action")).

In relevant part, Plaintiffs accuse Defendants of abusing their positions of trust; conspiring to fraudulently misrepresent facts, sell the GCC property, and induce Plaintiffs to sign an unconscionable contract; and colluding to establish Glorieta 2.0 as the only bidder for Plaintiffs' home. And while Plaintiffs name Defendants in their "official and individual" capacities in the caption of their complaints, they use language throughout their complaints that demonstrates the individual defendants were acting on behalf of LifeWay and/or Glorieta 2.0, not on their own behalf. (*See*, *e.g.*, Doc. 72-1 ¶¶ 3 (Defendants Hill and Dean abused their positions of trust), 17 (Defendants Scott and Ward acted as Glorieta 2.0's "assigns . . . to cause Plaintiffs harm"), 32 (Defendant Hill, as "LifeWay's assigned GCC Agent[,]" and Defendant Scott, as "Glorieta 2.0['s] assigned Agent[,]" approached Plaintiffs in their "official capacity" to present fraudulent information and intimidate them into accepting the 2015 Offer), ¶ 62 (Defendants Hill and Scott, in their capacities as executives and/or directors of LifeWay and Glorieta 2.0, conspired to commit mail and wire fraud), 63–65 (Defendants Scott, Ward, Hill, and Dean colluded, in their capacities as executives and/or directors of LifeWay and Glorieta 2.0, to establish Glorieta 2.0 as the only bidder for Plaintiffs' home), 79 (Defendant Hill, as part of LifeWay's leadership and acting as the campus manager, withheld information about health risks at GCC); *see also* Doc. 20 ¶¶ 35 ("Individual 'LifeWay' Defendants in official capacity conjointly conspired"), 53 ("Individual Defendants, using their official 'Leadership fiduciary[,]'"), 57 ("LifeWay's leadership were abusing the trust and authority of their office[s]"), 60 (Defendants Rhyne and Weekley acted "in their official capacities for institutional defendants").

In short, Plaintiffs' allegations against these individual defendants all stem from conduct Defendants took in their capacities as employees, agents, or directors of LifeWay and Glorieta 2.0.[7] Consequently, the Court finds that all individual defendants are in privity with the corporate defendants in the 2013 lawsuit for purposes of preclusion. *See Fox*, 112 F.3d at 459–60; *see also Velasquez v. Halliburton Energy Servs., Inc.*, No. CV 11-0321 RB/GBW, 2011 WL 13284625, at *5 (D.N.M. Oct. 19, 2011) (finding that employees of a private company were in privity with the company for purposes of claim preclusion where the claims were based on "actions they took while functioning in their capacity as employees").

### c.  Plaintiffs' claims arise from the same events as those underlying the 2013 lawsuit.

To determine whether Plaintiffs' claims arise from the same underlying events as those in the 2013 lawsuit, the Court will summarize the claims in each.

Plaintiffs asserted three claims in their 2013 Third Amended Complaint:

(1) Count I ("Violations of Corporate Charter, Constitution and Bylaws") asserted "that LifeWay's decision to sell [GCC] was not in accord with its internal procedures and policies, and that" several of the defendants "conspired to fraudulently sell [GCC] to Glorieta 2.0, which damaged Plaintiffs because LifeWay decided not to renew their lease in connection with the sale" (*see* Doc. 78 at 6 ¶ 14 (citing *Tompkins I*, Doc. 125 ¶¶ 8–15));

(2) Count II ("Fraudulent Conveyance") asserted "that the defendants committed fraud and conspired with each other in order to get LifeWay and Glorieta 2.0 to agree to the sale, and that

---

[7] The Court notes several confusing allegations in Plaintiffs' First Amended Complaint that assert certain Defendants acted in both their "official" and "unofficial" or "individual" capacities. (*See* Doc. 20 ¶¶ 35, 89, 98.) Plaintiffs do not describe how Defendants acted in their "unofficial" capacities, and the Court finds these allegations insufficient to change its ruling on privity.

individual LifeWay trustees breached their fiduciary obligations to LifeWay" (*see id.* at 6 ¶ 15 (citing *Tompkins I*, Doc. 125 ¶¶ 16–21)); and

(3) Count III ("Breach of Implied Contract") asserted "that LifeWay had entered into an implied contract with Plaintiffs to continue renewing Plaintiffs' ground lease for another [50] years." (*see id.* at 6 ¶ 16 (citing *Tompkins I*, Doc. 125 ¶¶ 22–29).)

Plaintiffs assert five claims in their Second Amended Complaint in this case:

(1) Count I ("Fraud") alleges that Defendants colluded to intentionally misrepresent information to leaseholders about LifeWay's finances in order to force leaseholders to sell their homes at a loss. Plaintiffs further assert that LifeWay failed to make needed repairs to the GCC property and illegally sold the property to Glorieta 2.0. Finally, Plaintiffs claim that all Defendants conspired to fix a lower value on Plaintiffs' home and position Glorieta 2.0 as the only bidder on the home, causing Plaintiffs financial loss. (*See* Doc. 72-1 ¶¶ 22–38.)

(2) Count II ("Denial of Constitutional Due Process") alleges that Defendants' misrepresentation of facts and taking of Plaintiffs' property pursuant to the lease agreement violated Plaintiffs' 4th, 5th, and 14th Amendment rights and injured Plaintiffs financially. (*Id.* ¶¶ 39–44.)

(3) Count III ("Unconscionable Contract") alleges either that the GCC sale contract was unconscionable, or that the 2015 Offer for the purchase of Plaintiffs' home was unconscionable because it would unjustly enrich Defendants at Plaintiffs' expense. (*Id.* ¶¶ 45–58; *see also* Docs. 20 ¶¶ 67, 77; 72-1 ¶ 47 (asserting that Glorieta 2.0 "knowingly benefited at Plaintiffs['] expense reaping great value pursuant to an unconscionable contract if not fairly compensated for Private Property"), 57 (asserting that "Plaintiffs' complaint adequately presents a claim to declare

LifeWay's presentation of Glorieta 2.0 contract to Plaintiffs void on the basis of Unconscionability").)

(4) Count IV ("Bid-Rigging") alleges that Defendants conspired to commit mail and wire fraud in orchestrating fraudulent misrepresentations about LifeWay's finances to position Glorieta 2.0 as the only bidder for Plaintiffs' home. (Doc. 72-1 ¶¶ 59–71.) The "bid" Plaintiffs rely on in Count IV is the 2015 Offer. (*See id.* ¶¶ 65, 68.)

(5) Count V ("Breach of Fiduciary") alleges that Plaintiffs had a fiduciary relationship with LifeWay, which LifeWay breached by failing to perform needed maintenance at GCC and by fraudulently conveying GCC to Glorieta 2.0. (*Id.* ¶¶ 72–83.)

The Court finds there is "identity of the cause of action in both suits" because, with the exception of the claims that rest on the 2015 Offer,[8] Plaintiffs' claims in the current lawsuit arise from the same underlying events as their claims in the 2013 lawsuit—the 2013 sale of GCC from LifeWay to Glorieta 2.0 and the devaluation of Plaintiffs' property concurrent to that sale. *See Lenox MacLaren*, 847 F.3d at 1239–40 (10th Cir. 2017) (citations omitted). That Plaintiffs now present their claims "under the rubric of slightly different legal theories . . . does not obscure the fact that they all arise out" the same operative set of facts. *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1170 (10th Cir. 2000). Accordingly, the Court finds that claim preclusion prevents Plaintiffs from bringing all of their claims against the individual defendants.

## 2. Plaintiffs' claims against LifeWay and Glorieta 2.0 are barred by claim preclusion.

In his 2015 Order, Judge Browning found that Plaintiffs had failed to state a claim in Count III, "Breach of Implied Contract." (*See Tompkins I*, Doc. 186 at 18–20.) There, Plaintiffs alleged

---

[8] The Court will analyze Plaintiffs' claims that rely on the 2015 Offer in Section III(C).

that they had an implied contract with LifeWay that allowed Plaintiffs to lease their GCC lot for another 50 years. (*See Tompkins I*, Doc. 125 ¶¶ 22–29.) LifeWay's "failure of the fiduciary leadership[,] . . . false representation of facts[,]" and sale of GCC, therefore, breached the parties' contract. (*See id.* ¶ 29.) Thus, the court's dismissal was a final judgment on the merits for the purposes of claim preclusion. *See Walker*, 660 F. App'x at 682 (citation omitted).

LifeWay and Glorieta 2.0 are parties to both lawsuits, meeting the second element of claim preclusion. And again, with the exception of Plaintiffs' claims related to the 2015 Offer, their claims against LifeWay and Glorieta 2.0 in this lawsuit arise from the same events that gave rise to the 2013 lawsuit. *See Lenox MacLaren*, 847 F.3d at 1239. Therefore, the Court will dismiss with prejudice all of Plaintiffs' claims against LifeWay and Glorieta 2.0.

### C.   Where Plaintiffs now rely on the 2015 Offer, they fail to state a claim for either "unconscionable contract" or "bid rigging."

Because Plaintiffs include factual allegations about the 2015 Offer to purchase their property, an offer that was not part of their 2013 lawsuit, the Court will treat these claims separately.

### 1.   Plaintiffs fail to state a claim for "unconscionable contract."

As the Court explained above, Count III could be construed to assert that LifeWay's 2015 Offer to purchase Plaintiffs' home for less than fair market value was an "unconscionable contract," and is not subject to claim preclusion. If this was Plaintiffs' intent, they have failed to state a claim on which relief can be granted.

"[U]nconscionability is an affirmative defense to contract enforcement . . . .'" *Laurich v. Red Lobster Rests., LLC*, 295 F. Supp. 3d 1186, 1210 (D.N.M. 2017) (quoting *Strausberg v. Laurel Healthcare Providers, LLC*, 304 P.3d 409, 412 (N.M. 2013)). "Consequently, '[c]ourts may render

a contract or portions of a contract unenforceable under the equitable doctrine of unconscionability when the terms are 'unreasonably favorable to one party while precluding a meaningful choice of the other party.'" *Id.* (quoting *Dalton v. Santander Consumer USA, Inc.*, 385 P.3d 619, 621 (N.M. 2016) (internal quotation and citation omitted)). Plaintiffs have the burden to show that the 2015 Offer or a portion thereof "should be voided as unconscionable." *Id.* (quoting *Dalton*, 385 P.3d at 621) (internal citation omitted).

Yet, Plaintiffs cannot show that the 2015 Offer was a contract at all, so there is nothing for the Court to render unenforceable. "Under New Mexico law, '[a] legally enforceable contract requires evidence supporting the existence of an offer, an acceptance, consideration, and mutual assent.'" *La Frontera Ctr., Inc. v. United Behavioral Health, Inc.*, 268 F. Supp. 3d 1167, 1197 (D.N.M. 2017) (quoting *Piano v. Premier Distrib. Co.*, 107 P.3d at 14 (N.M. Ct. App. 2005) (internal quotation marks and citation omitted)). Here, LifeWay made a settlement offer to Plaintiffs. "The offer was that if Plaintiffs would release all of their claims against all parties, and dismiss their appeal, then Plaintiffs would be paid $84,990 . . . ." (Doc. 78 at 20.) But as Plaintiffs admit in their Second Amended Complaint, they refused the offer, thus the parties never formed a contract. (*See* Doc. 72-1 ¶ 30.) As a result, Plaintiffs may not state a claim that the contract is unconscionable, and the Court will dismiss Count III against all Defendants.

### 2. Plaintiffs fail to state a claim for "bid-rigging."

Plaintiffs assert in Count IV that Defendants conspired to violate bid-rigging laws in violation of the Sherman Act, 15 U.S.C. § 1.[9] (Doc. 72-1 ¶ 64.) Plaintiffs base Count IV in part on

---

[9] "[T]he Sherman Act does not itself provide a private right of action[,]" and Plaintiffs' right to sue is instead "established by section 4 of the Clayton Act . . . ." *Ruotolo v. Fannie Mae*, 933 F. Supp. 2d 512, 519 (S.D.N.Y. 2013) (quoting *In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51, 62 (2d Cir. 2012) (quoting 15 U.S.C. § 15)). The Court will construe Plaintiffs' Second Amended Complaint "to invoke the private-right-of-action provisions of the Clayton Act." *Id.* (citation omitted).

LifeWay's decision not to purchase Plaintiffs' property upon termination of the ground lease agreement. Thus, Count IV also arises from the same underlying events as those in the 2013 lawsuit and is barred by claim preclusion. Additionally, as the Court explains below, Plaintiffs both lack standing to bring a claim under the Sherman Act and fail to state a claim for bid-rigging, and the Court will dismiss Count IV with prejudice.

"To prevail on a claim stating a Sherman Act violation, a private plaintiff 'must allege a combination or some form of concerted action between at least two legally distinct economic entities that constituted an unreasonable restraint of trade either per se or under the rule of reason.'" *Ruotolo v. Fannie Mae*, 933 F. Supp. 2d 512, 519 (S.D.N.Y. 2013) (quoting *Primetime 24 Joint Venture v. NBC*, 219 F.3d 92, 103 (2d Cir. 2000)) (internal quotation marks and citation omitted). Plaintiffs must also allege an "'antitrust injury'—also called 'antitrust standing'—because 'a plaintiff can recover only if the loss stems from a competition-reducing aspect or effect of the defendant's behavior.'" *Id.* (quoting *Primetime 24 Joint Venture*, 219 F.3d at 103) (internal quotation marks and citations omitted).

Plaintiffs' allegations in support of their bid-rigging claim are confusing. Plaintiffs believe that Defendants colluded to make some sort of agreement that "LifeWay would not honor a LifeWay contract clause with [Plaintiffs] that granted LifeWay 'first right of refusal'" to purchase Plaintiffs' property upon termination of the lease. (Doc. 72-1 ¶ 63; *see also* Doc. 81-1 ¶ 55.) The result of Defendants' agreement, Plaintiffs contend, is that the parties positioned Glorieta 2.0 as the "solo bidder" on Plaintiffs' property. (*Id.* ¶¶ 63–64.) Plaintiffs assert that Defendants' agreement "unreasonably limit[ed] competition." (*Id.* ¶ 64.) "The goals and scope of the conspiracy are not stated with any precision, but Plaintiffs ask the Court to infer some manner of

conspiracy on the basis" that LifeWay did not make an offer to purchase Plaintiffs' home upon its decision to terminate the lease agreement. *See Ruotolo*, 933 F. Supp. 2d at 519. The Court finds that Plaintiffs' "factual allegations are insufficient to state a plausible antitrust conspiracy between" Defendants. *See id.* at 520.

To maintain a claim under Section I of the Sherman Act, "proof of joint or concerted action is required." *Id.* (quoting *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 183 (2d Cir. 2012)) (internal citation omitted). "To prove the existence of this unlawful conspiracy, 'the antitrust plaintiff should present direct or circumstantial evidence that reasonably tends to prove that the [defendant] and others had a conscious commitment to a common scheme designed to achieve an unlawful objective.'" *Id.* (quoting *Anderson News, L.L.C.*, 680 F.3d at 184) (internal quotation marks and citation omitted). Accordingly, "[a]t the pleading stage, a complaint claiming conspiracy, to be plausible, must plead 'enough factual matter (taken as true) to suggest that an agreement was made,' *i.e.*, it must provide 'some factual context suggesting [that the parties reached an] agreement,' not facts that would be 'merely consistent' with an agreement." *Id.* (quoting *Anderson News, L.L.C.*, 680 F.3d at 184) (internal quotation omitted).

Plaintiffs have "not pleaded facts that plausibly show that Defendants had a conscious commitment to a common scheme designed to achieve an unlawful objective." *See id.* Plaintiffs have not advanced any theory to plausibly show that LifeWay retained a reason to submit a competing offer on Plaintiffs' home, as LifeWay had sold GCC to Glorieta 2.0. Moreover, Plaintiffs have not pleaded facts to show how Defendants' supposed agreement violated antitrust laws, which "'were enacted for the protection of *competition*,' not the protection of a single market participant like Plaintiff[s]." *Id.* (quoting *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328,

338 (2016)) (internal quotation marks and citation omitted). In sum, Plaintiffs have failed to state a claim under the Sherman Act.

Moreover, Plaintiffs have failed to allege a plausible antitrust injury in order to have standing to bring suit. *See Ruotolo*, 933 F. Supp. 2d at 521. "An antitrust injury is 'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" *Id.* (quoting *Atl. Richfield*, 495 U.S. at 334) (internal quotation omitted). "As relevant here, this means that '[a]n antitrust plaintiff must allege not only cognizable harm to [him]self, but an adverse effect on competition market-wide.'" *Id.* at 521–22 (quoting *Todd v. Exxon Corp.*, 275 F.3d 191, 213 (2d Cir. 2001)) (internal quotation omitted). "Thus, a plaintiff 'bears the initial burden of showing that the challenged action has had an *actual* adverse effect on competition as a whole in the relevant market; to prove it has been harmed as an individual competitor will not suffice.'" *Id.* (quoting *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 543 (2d Cir. 1993)). Plaintiffs fail to meet this burden. Plaintiffs do not plead any facts to show that Defendants' alleged conspiracy harmed the market as a whole, only that they were individually harmed because Glorieta 2.0 offered them less than market value for their home. *See id.* Consequently, Plaintiffs lack standing to bring a claim under the Sherman Act, and the Court will dismiss Count IV.[10]

**THEREFORE,**

**IT IS ORDERED** that Plaintiffs' Motion for Leave to File Second Amended Complaint, filed on May 7, 2018 (Doc. 72) is **DENIED**;

---

[10] Plaintiffs also allege that Defendants committed wire and mail fraud in furtherance of the conspiracy in Count IV. (*See* Doc. 72-1 ¶ 62.) Plaintiffs offer no facts in support of these allegations, and the Court dismisses any claim for wire or mail fraud for failure to state a claim.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment as to Counts I, II, and III, filed on June 21, 2018 (Doc. 78) is **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiffs' lawsuit is hereby **DISMISSED with prejudice**.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE